## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
## CIVIL ACTION - LAW

| | |
|---|---|
| AAMCO TRANSMISSIONS, INC.<br>201 Gibraltar Road, Suite 100<br>Horsham, PA 19044<br>    Plaintiff,<br>v.<br>MICHAEL E. STEVEN<br>11028 West Kellogg<br>Wichita, KS 67278<br>    Defendant. | :<br>:<br>:<br>:<br>: No.<br>:<br>:<br>:<br>: |

## COMPLAINT

Plaintiff, AAMCO TRANSMISSIONS, INC. ("ATI"), by and through its undersigned counsel, hereby complains against Defendant, Michael E. Steven ("Steven"), as follows:

### The Parties

1. Plaintiff ATI is a Pennsylvania corporation, with its principal place of business located at 201 Gibraltar Road, Horsham, Pennsylvania 19044.

2. Defendant Steven is an adult individual who is a resident of Kansas and who has a principal place of business at 11028 West Kellogg, Wichita, KS 67278.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. §1332 (a) (diversity jurisdiction).

4. Venue lies in this District pursuant to 28 U.S.C.A. §1391, in that ATI resides in this District, Defendant has transacted business with ATI continuously over years in this District and the claims arise under a contract that was made in this District.

### The "AAMCO" Name and its Goodwill

5. Since at least 1963, ATI has continually used the name "AAMCO" as its trade name, trademark and service mark in connection with the operation of transmission repair centers. It is the "AAMCO" marks registered on the principal register of the United States Patent and Trademark office for "automobile repair services".

6. ATI is engaged in interstate commerce in, <u>inter alia</u>, the business of franchising or licensing others to use the mark and name "AAMCO" in the operation of transmission and general automotive repair centers throughout the United States and Canada. There are approximately 800 independent AAMCO locations licensed or franchised by ATI to operate transmission and general automotive repair centers under the "AAMCO" trade name and trademark.

7. The "AAMCO" trade name and trademark have become universally associated with the repair of motor vehicles and the operation of transmission and general automotive repair centers. As a result, ATI owns common-law trade name and trademark rights in the name "AAMCO" and in the marks described above. By virtue of the long use and promotion and the resulting fine public reputation of the trade name "AAMCO", there exists a secondary meaning in the name "AAMCO" and the above marks.

8. Large sums of money have been spent in advertising and promoting the services sold under ATI's trade name and trademarks, and today ATI has a substantial business and a long established goodwill associated with the name and the above marks in connection with the services provided under its trade name and trademarks.

9. ATI has a vital interest in protecting its trade name and trademarks and the preservation and protection thereof are essential to the maintenance of ATI's quality transmission and general automotive repair centers and the goodwill and reputation associated therewith. To

supervise and control use of its trade name and trademarks, ATI has established standards and policies governing the quality of service to be provided to the public and has established procedures calling for the inspection of franchisees' centers to determine that the standards and policies are being followed.

### The Parties' Contractual Relationship

10. On or about September 16, 2009, ATI and Defendant entered into a franchise agreement, pursuant to which Defendant was authorized to use the name and mark "AAMCO" in connection with the operation of an AAMCO Transmission Center located at 3205 South Broadway, Wichita, KS (the "Broadway Center"). A true and correct copy of the said franchise agreement (the "Broadway Franchise Agreement") is attached hereto and made a part hereof at Exhibit "A".

11. On or about September 16, 2009, ATI and Defendant entered into a franchise agreement, pursuant to which Defendant was authorized to use the name and mark "AAMCO" in connection with the operation of an AAMCO Transmission Center located at 11028 West Kellogg, Wichita, KS (the "West Kellogg Center"). A true and correct copy of the said franchise agreement (the "West Kellogg Franchise Agreement") is attached hereto and made a part hereof at Exhibit "B".

12. On or about September 16, 2009, ATI and Defendant entered into a franchise agreement, pursuant to which Defendant was authorized to use the name and mark "AAMCO" in connection with the operation of an AAMCO Transmission Center located at 4925 East Kellogg, Wichita, KS (the "East Kellogg Center"). A true and correct copy of the said franchise agreement (the "East Kellogg Franchise Agreement") is attached hereto and made a part hereof at Exhibit "C".

13. The Broadway Franchise Agreement, West Kellogg Franchise Agreement and East Kellogg Franchise Agreement are hereinafter collectively referred to as the "Franchise Agreements". By the same token, the Broadway Center, West Kellogg Center and East Kellogg Center are hereinafter collectively referred to as the "Centers".

14. Each of the Franchise Agreements has an initial contract term of fifteen (15) years. *See* Franchise Agreements, Ex. "A", "B" and "C", at § 3.

15. During the term of the Franchise Agreements Defendant is contractually obligated to "devote his[] best efforts to the day-to-day operations and development of the business of the Center". *Id.* at 8(d).

16. Consistent with this obligation, and in furtherance of other important interests of ATI, the Franchise Agreements also contain an in-term non-compete requirement which provide in pertinent part as follows:

> ... Franchisee represents and warrants...[e]xcept for the business contemplated by this Agreement or except as approved by AAMCO pursuant to section 8(e) above, during the term of this Agreement, Franchisee shall not engage in any business the same as, similar to, or in competition with any Center, AAMCO or the System.

Id. at §20(a).

### Defendant Opens Competing Businesses and Winds Down/Closes his AAMCO Centers

17. Sometime after Defendant began operating the Centers, Chrysler Corporation, which had previously terminated car dealerships owned by Defendant, informed Defendant that those dealerships would be reinstated.

18. As ATI later discovered, Defendant, in violation of the non-competition provisions of his Franchise Agreements with ATI, reopened those Chrysler dealerships and began operating automotive repair service centers under the "Chrysler" and/or "Steven" name, at the same

locations as, or in direct proximity to, one or more of the Centers (and in direct competition with the Centers).

19. In or around the spring of 2011, Defendant, without informing ATI, effectively closed down the West Kellogg Center in violation of the West Kellogg Franchise Agreement and re-opened it under the name "Mike Steven Automotive, Inc." and/or "Steven Chrysler Jeep Dodge, Inc."

20. In or around this same time period, Defendant, without informing ATI, effectively closed down the East Kellogg Center in violation of the East Kellogg Franchise Agreement and later re-opened it under the name "Mike Steven Program Cars". Nevertheless, the East Kellogg Center continues to display the AAMCO trademark on external and internal signage.

21. The storefront of the Broadway Center continues to display the AAMCO trademark on external signage but appears to be closed to the public and reports very low sales.

### ATI Discovers Defendant was Underreporting his Centers' Sales

22. Under the Franchise Agreements, Defendant is required, throughout their fifteen (15) year terms, to pay a weekly franchise fee to ATI calculated at 7 ½ % of the gross business sales from Defendant's Centers, except tire sales. *See* Amendment to Franchise Agreement, § 10(a), Ex.s "A," "B" and "C".

23. Each week, Defendant is required to submit to ATI accurate weekly business reports documenting the Centers' sales and the amounts collected. Defendant's weekly business reports are used to calculate the weekly franchise fees due. *Id.*

24. ATI is contractually entitled to audit Defendant's franchise businesses pursuant to Section 11.1 of the Franchise Agreements which provides that Defendant shall:

> ...permit AAMCO during business hours to inspect the premises of the Center, confer with Franchisee and Franchisee's employees and customers,

> check equipment and inventories, methods, books and records, and perform any other inspection deemed by AAMCO to be necessary to determine the nature, quality and uniformity of service rendered at the Center in order to protect the System and to determine Franchisee's performance under this Agreement. Franchisee specifically agrees that neither Franchisee's physical presence in the Center nor specific consent to any such inspection shall be necessary;

*See* Franchise Agreements, § 8(m), Ex.s "A," "B" and "C".

25. The Franchise Agreements further provide that Defendant shall:

> maintain a system of bookkeeping and recordkeeping as requested by AAMCO, keep the Center's books and records at the Center at all times and make them available during business hours to authorized representatives of AAMCO for the purpose of verifying the accuracy of Franchisee's business and financial reports. If such verification reveals that the gross receipts reported by Franchisee to AAMCO are more than two percent (2%) less than Franchisee's actual gross receipts, Franchisee agrees to reimburse AAMCO for all expenses connected with such verification, including, but not limited to, reasonable administrative, accounting and legal fees, and without limitation to any other rights and remedies AAMCO in its sole discretion, may elect to pursue. Franchisee shall pay to AAMCO immediately any deficient and delinquent franchise fees, together with interest at the rate of eighteen percent (18%) per annum calculated from the date when franchise fees should have been paid to the date of actual payment. Franchisee further acknowledges and agrees that the actual damages sustained by AAMCO in the event of underreporting of gross receipts are difficult to ascertain and that in addition to the fees, interest and expenses stated above, Franchisee shall also pay AAMCO liquidated damages in an amount equal to three times franchise fees due plus interest as calculated above. These liquidated damages shall be in addition to any other remedies AAMCO may have.

26. On April 13, 2011, after a substantial drop off in reported sales from the Centers, ATI performed a field audit on the Broadway Center and the West Kellogg Center. The East Kellogg Center had been closed by the Defendant at that time (only to later be re-opened under the name "Mike Steven Program Cars").

27. The audit revealed, among other things, that automobile repair work that should have, under the Franchise Agreements, been performed by Defendant's Centers (and upon which

franchise fees should have been paid to ATI) was instead diverted to Defendant's competing businesses.

28. The audit also revealed numerous irregularities in the practices of Defendant with respect to the reporting to ATI of work performed at the Centers and the payment of fees to ATI by Defendant as required by the Franchise Agreements.

29. On June 17, 2011, ATI sent a letter to Defendant informing him that he was in breach of the Franchise Agreements and needed to immediately cure the multiple violations of his franchise agreements by, among other things, ceasing the operation of his competing businesses, recommencing operation of the East Kellogg Center, and accurately report and pay to ATI the franchise fees that were due based on all of the Gross Receipts generated at the Centers (including work that was diverted from those locations to Defendant's other businesses). A true and correct copy of the said letter is attached hereto and made apart hereof at Exhibit "D".

30. In response, Defendant failed and refused to take any action to remedy the above described violations of his obligations under the Franchise Agreements.

31. Defendant has ceased reporting sales of any significance from the Centers and, by his actions as set forth above, has repudiated his Franchise Agreements.

32. Despite his contractual obligation to operate the Centers and honor the in-term non-compete provision in the Franchise Agreements, Defendant has shut down the Centers and replaced them with competing automotive repair businesses.

33. Defendant has failed and refused to pay ATI the amounts owed under the Franchise Agreements.

## COUNT I
### BREACH OF CONTRACT - SPECIFIC PERFORMANCE

34. ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 33 above.

35. ATI is entitled to specific performance of Section 20(a) of the Franchise Agreements which provide that, during their term, Defendant shall not, directly or indirectly, engage in any business the same as, or similar to, or in competition with any AAMCO Transmission Center, ATI or the AAMCO System.

36. Defendant nevertheless continues to operate a transmission and general automotive repair business at or in close proximity to the Centers in violation of the covenant not-to-compete contained in the Franchise Agreements.

37. By refusing to honor Section 20 of the Franchise Agreements, Defendant is misappropriating the goodwill generated under the AAMCO name and is causing ATI irreparable harm.

38. Defendant's failure to honor Section 20 of the Franchise Agreements further interferes with ATI's ability to develop the market, retain the goodwill and re-establish the presence of the AAMCO name in this market, causing ATI irreparable harm.

39. ATI has no adequate remedy at law for damages, and unless specific performance of Section 20(a) of the Franchise Agreements is ordered and injunctive relief granted to restrain Defendant's unlawful conduct, ATI will continue to suffer irreparable harm.

## COUNT II
### BREACH OF CONTRACT - ACCOUNTING

40. ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 39 above.

41. Defendant has breached the Franchise Agreements by repudiating them in favor of his competing businesses which he now operates at or near the Center locations.

42. As a direct and proximate result of Defendant's conduct, ATI has lost the Center locations and been deprived of the franchise benefits it would have enjoyed but for Defendant's wrongful repudiation.

43. At all times relevant, Defendant has maintained exclusive control and possession of the Centers' books and accountings and has redirected Center sales to its competing business in violation of the Franchise Agreements and to the detriment and damage of ATI.

44. Despite demands to account for sales and pay the rightful amount of franchise fees due and owing ATI, Defendant has refused and continues to refuse to account to ATI concerning sales lost to the Centers because of Defendant's wrongful conduct.

45. Plaintiff is informed and believes, and based upon such information and belief, alleges that the amount wrongfully taken by Defendant is greater than the jurisdictional limits of this Court.

46. ATI has incurred and continues to incur damages which must be accounted for, trebled in accordance with section 8(o) and paid.

## COUNT III – FRAUD AND DECEIT

47. ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 46 above.

48. Defendant had a duty to provide true and correct weekly business reports to ATI and pay to ATI the corresponding license fees due thereon.

49. Defendant knowingly submitted understated weekly business reports to ATI and knowingly underpaid franchise fees due and owing to ATI with the hope and intent that ATI

would rely on the understated business report as being accurate and accept the underpayment of franchise fees as full payment, which ATI did.

50. ATI relied on Defendant's understated business reports to its detriment and loss.

51. ATI has been damaged as a result of Defendant's wrongful conduct in that ATI has been underpaid the license fees due and owing it under the Franchise Agreements in an amount to be determined after the above referenced accounting is performed.

52. Defendant's wrongful conduct was intentional and egregious, and as such, Defendant should also be liable for punitive damages.

## COUNT IV – COSTS AND ATTORNEYS' FEES

53. ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 52 above.

54. Pursuant to Section 17(a) of the Franchise Agreements, Defendant agreed to pay all costs incurred by ATI in collecting money owed under the Franchise Agreements, including attorneys' fees.

55. Pursuant to Section 8(o) of the Franchise Agreements, Defendant agreed to pay all expenses incurred by ATI in connection with the audit and accounting of his businesses, including administrative, accounting and legal fees.

56. ATI has incurred and continues to incur such costs and fees in the pursuit of this action.

## RELIEF SOUGHT

WHEREFORE, based on the forgoing causes of action, ATI requests the following relief:

A. That Defendant, his agents, servants, employees and those persons in active concert or participation with him, be preliminarily and permanently enjoined and restrained from engaging in any business the same as, similar to, or in competition with any of the Centers,

AAMCO or the System for the remaining term of the Franchise Agreements and thereafter for a period of two (2) years within ten (10) miles of the former Centers or any other AAMCO Transmission Center.

B.  That Defendant be ordered to provide an accounting of his sales at the Centers and his competing businesses from the time he repudiated the Franchise Agreements forward, and that these sales be used to calculate the franchise fees that should have been paid to ATI and that such lost fees be trebled and awarded to ATI.

C.  That Defendant be ordered to file with the Court and to serve on ATI within thirty (30) days after the issuance of any preliminary and/or permanent injunction herein, a report in writing, under oath, setting forth in detail the measures undertaken by Defendant to comply herewith.

D.  That the Court enter a money judgment in favor of ATI and against Defendant for breach of contract damages for an amount to be determined by the accounting.

E.  That the Court enter a money judgment in favor of ATI and against Defendant for fraud and punitive damages for an amount to be determined.

F.  That ATI be awarded its reasonable attorneys' fees, costs of court and all other and further relief to which it may be entitled.

William B. Jameson
Attorney ID. # 58949
Attorney for Plaintiff
AAMCO Transmissions, Inc.
201 Gibraltar Road
Horsham, Pennsylvania 19044
(610) 668-2900